UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL OKOSI,<br><br>              Plaintiff,<br><br>v.<br><br>SCOTT ROBY<br><br>              Defendant. | Civil Action No. _____ |

## **COMPLAINT AND JURY DEMAND**

## **INTRODUCTION**

1. In November 2018, defendant Scott Roby, acting as a police officer in the Boston Police Department ("BPD"), violently arrested plaintiff Michael Okosi in the entryway of his own home. The police report alleged that Officer Roby did this because Mr. Okosi "clenched his fists and attempted to push Officer Roby to the side with his right hand and then hit Officer Roby in the chest with a closed fist." Mr. Okosi was charged with assault and battery on a police officer and disorderly conduct. But Mr. Okosi did not in fact do what Officer Roby alleged, and both the arrest and the ensuing charges were improper.

2. The events immediately preceding Mr. Okosi's arrest were recorded by a security camera installed in his entryway. The Suffolk County District Attorney's Office dismissed the charges against Mr. Okosi after reviewing this exculpatory video.

3. In reality, as depicted on the video, Mr. Okosi did not hit anybody, and he committed no crimes. Nevertheless, Officer Roby and other BPD officers threw Mr. Okosi against the door, handcuffed him tightly, and forcibly propelled him out to a police cruiser. The

key allegations in the police report were false, and there was no basis to arrest Mr. Okosi or use force against him.

4. As a result of the defendant's unlawful actions, Mr. Okosi was jailed, faced false charges and a potential mandatory minimum sentence, suffered physical injuries to his feet and wrists, and was emotionally traumatized. In this lawsuit, Mr. Okosi seeks damages to compensate him for these and other harms.

## JURISDICTION AND VENUE

5. Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331, 1343, and 1367.

6. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391 because the facts giving rise to the claims occurred within this district.

## PARTIES

7. Plaintiff Michael Okosi is an individual residing in Dorchester, Massachusetts.

8. Defendant Scott Roby is a police officer with the BPD. Officer Roby acted at all relevant times as an on duty BPD officer. Officer Roby is sued in his individual and personal capacity.

## FACTS ALLEGED

### BPD Officers Unlawfully Arrested Mr. Okosi In His Home

9. Mr. Michael Okosi is from the Boston area. He is a graduate of Morehouse College. In November 2018, he was 30 years old. He is right handed.

10. Mr. Okosi owns a three-family home in a residential neighborhood in Dorchester, Massachusetts. He resides in the home, principally, but not exclusively, on an upper floor. There is a living area on the first floor. The door to this first floor living area is adjacent to the

front door to the building, as well as to an entryway area and staircase.  At the relevant time, the first floor living area was not occupied by a tenant.

11. On Friday, November 23, 2018, Mr. Okosi was at home.  It was a cold day, and the building heat was on.  Mr. Okosi pays to heat the building.

12. Mr. Okosi's fiancé encountered a woman she did not recognize in the first floor living area.  Mr. Okosi's fiancé called the police and reported the other woman had a knife.  The other woman departed the home.

13. Police responding to the call encountered the other woman on the street, frisked her, and did not locate a knife.

14. By this time, a large number of police officers—on information and belief, eight or more—had entered Mr. Okosi's entryway and the first floor living area.

15. Mr. Okosi had also come downstairs.  Mr. Okosi was scared and upset that there were a large number of police officers in his house.  He asked them to leave.  They did not.

16. Shortly before Mr. Okosi's arrest, Officers Roby, Stephan Lockwood, and Michael Mastroardi were present in the first floor living area or the entryway.  Officer Roby was standing in the doorway to the first floor living area, adjacent to the entryway and the front door of the building.  Officer Mastroardi was standing in the entryway.  On information and belief, Officer Lockwood was standing inside the first floor living area, in proximity to Mr. Okosi.

17. Shortly before Mr. Okosi's arrest, Mr. Okosi said, among other things, "Yo, can you close my front door, bro?  I… I… I pay for the heat." and "Can you close my front door, please?  I'll close it myself."

18. Officer Roby then made a gesture instructing Officer Mastroardi to close the front door.  Officer Roby said, among other things, "Calm down.  It's already closing."



*Figure 1: Defendant Roby instructs Officer Mastroardi to shut Mr. Okosi's front door (redacted)*

19. Officer Mastroardi closed the front door most of the way.

20. Using his right hand, Mr. Okosi reached past Officer Roby and shut the door the rest of the way.  Mr. Okosi did not touch or attempt to touch Officer Roby.



*Figure 2: Mr. Okosi reaches past defendant Roby to finish shutting his front door*

21. Officer Lockwood was in proximity to Mr. Okosi and witnessed Mr. Okosi use his right hand to shut the front door. Officer Lockwood did not observe Mr. Okosi attempt to push or strike Officer Roby.

22. When the front door came into contact with the door frame, it made a noise. Officer Roby suddenly grabbed Mr. Okosi and forcefully pushed him against the inside of the front door.

23. Officer Mastroardi and other officers assisted Officer Roby in restraining Mr. Okosi. Officer Roby and the other officers forcefully held Mr. Okosi against the inside of his front door and twisted Mr. Okosi's arms and hands behind his back.



*Figure 3: Officer Roby pushing Mr. Okosi against his front door and yelling in his face*

24. Mr. Okosi was surprised to be arrested and repeatedly said "I didn't do shit to you!" and "What did I do?"

5

25. Mr. Okosi also repeatedly informed Officer Roby and the other officers that they were being recorded by an installed security camera. Among other things, Mr. Okosi said, "Yo, I got a camera right there. That has everything. I didn't do shit to you."



*Figure 4: Mr. Okosi observes his camera recording the BPD Officers*

26. Officer Roby and other officers cuffed Mr. Okosi very tightly and forced him out of his home. Mr. Okosi was not wearing shoes and sustained abrasions to his feet from the outdoor terrain. Additionally, the handcuffs were clasped so tightly that they bruised Mr. Okosi's wrists and caused his hands to swell.

27. Officer Roby had no probable cause to arrest Mr. Okosi.

28. Officer Roby's use of force against Mr. Okosi was unnecessary, unjustified, and unreasonable.

29. BPD officers booked Mr. Okosi at B3 Morton Street Station.

30.     Mr. Okosi was held in a cell overnight. Mr. Okosi remained in the lockup from Friday until bail was posted later that weekend. While in the lockup, Mr. Okosi experienced extreme anxiety and emotional distress.

### BPD Officers Included False Allegations In The Police Report

31.     After Mr. Okosi was arrested, Officer Lockwood was responsible for drafting the police report.

32.     Officer Roby told Officer Lockwood that Mr. Okosi "clenched his fists and attempted to push Officer Roby to the side with his right hand and then hit Officer Roby in the chest with a closed fist," and thereby caused these allegations to be included in the report. These allegations were false, and Officer Roby knew they were false.

33.     As the result of these false allegations, Mr. Okosi was charged with assault and battery on a police officer and disorderly conduct.

34.     In general, assault and battery on a police officer is punishable by a mandatory minimum sentence of 90 days' incarceration and a fine of $500, and a maximum sentence of up to two and half years' incarceration and a fine of up to $5,000.

35.     Mr. Okosi was aware that he faced serious, life-altering penalties and collateral consequences as a result of these false charges, and this knowledge caused him to suffer extreme emotional distress.

### BPD Officers Admitted The Inaccuracy Of The Police Report

36.     On or around November 27, 2018—just days after the incident in his home—Mr. Okosi made an administrative complaint to the BPD concerning the circumstances of his arrest and the misconduct of the arresting officers.

37.     Even though Mr. Okosi faced pending charges arising from his arrest, he voluntarily provided at least one recorded interview about the incident to BPD Internal Affairs investigators in November or December 2018.

38.     Mr. Okosi also voluntarily provided BPD Internal Affairs investigators with the video recording of his arrest and the events immediately preceding it, and with photographs of the injuries to his feet and wrists.

39.     During the subsequent investigation, BPD Internal Affairs investigators interviewed Officer Roby, Officer Lockwood, Officer Mastroardi, and at least one other officer who observed the circumstances immediately preceding Mr. Okosi's arrest.

40.     When interviewed by BPD Internal Affairs investigators, Officer Lockwood, Officer Mastroardi, and the other officer all stated, in summary, that they did not recall seeing Mr. Okosi attempt to push Officer Roby or strike Officer Roby in the chest with a closed fist, as alleged in the police report.

41.     When interviewed by BPD Internal Affairs investigators, Officer Roby stated, among other things, that the police report was not completely accurate, and that Mr. Okosi had used his right hand to close the door.  Officer Roby nevertheless made a new false assertion that Mr. Okosi's left hand pushed him in the chest and sternum in the manner of "a stiff arm".  The BPD did not discipline any officers for their actions in connection with Mr. Okosi arrest.

**Prosecutors Dismissed The Charges Against Mr. Okosi Following Disclosure Of The Exculpatory Video Recording**

42.     The charges against Mr. Okosi arising from November 23, 2018, terminated in Mr. Okosi's favor.  Specifically, as described below, the charges against Mr. Okosi were dismissed.

43. The Suffolk County District Attorney's Office ("SCDAO") prosecuted Mr. Okosi's case.

44. Following Mr. Okosi's arraignment, Mr. Okosi's defense attorney sent the exculpatory video of the events immediately preceding Mr. Okosi's arrest to the SCDAO prosecutors responsible for Mr. Okosi's prosecution.

45. According to notes in the prosecutor's file, by January 31, 2019, the Commonwealth was planning to "go over the video with the [Officer Roby] and discuss dismissal with him."

46. On information and belief, an SCDAO prosecutor subsequently spoke with Officer Roby and discussed the video with him.

47. According to notes in the prosecutor's file, SCDAO officials instructed the responsible prosecutor to "Move to dismiss outright after review of video."

48. On March 7, 2019, the charges against Mr. Okosi arising from November 23, 2018, were voluntarily dismissed at the request of the SCDAO on behalf of the Commonwealth. The docket records that "[a]fter viewing video, Comm. moves to dismiss."

## COUNT I
## 42 U.S.C § 1983
### Unlawful Arrest in Violation of the Fourth Amendment

49. Mr. Okosi restates and realleges the foregoing paragraphs.

50. Officer Roby, acting under color of law, intentionally and unlawfully arrested Plaintiff without probable cause, and without any warrant or other legal process, thereby depriving Mr. Okosi of the right to be free from unreasonable search and seizure as guaranteed by the Fourth Amendment to the United States Constitution.

51. As a direct result, Mr. Okosi was deprived of his liberty and suffered harm, including physical and emotional harm.

### COUNT II
### 42 U.S.C § 1983
### Excessive Force in Violation of the Fourth Amendment

52. Mr. Okosi restates and realleges the foregoing paragraphs.

53. At all relevant times, Officer Roby acted under color of law.

54. Officer Roby grabbed, shoved, and handcuffed Mr. Okosi, and forced him barefoot over outdoor terrain, all of which was unreasonable in the circumstances given that he knew no probable cause existed to arrest him.

55. This excessive force violated Mr. Okosi's rights under the Fourth Amendment.

### COUNT III
### Battery

56. Mr. Okosi restates and realleges the foregoing paragraphs.

57. Officer Roby intentionally touched Mr. Okosi without consent when he grabbed, shoved, handcuffed, and forcibly moved Mr. Okosi while arresting him without probable cause.

58. This unconsented-to touching caused injury to Mr. Okosi, including injuries to his feet and wrists.

### COUNT IV
### False Arrest (Common Law)

59. Mr. Okosi restates and realleges the foregoing paragraphs.

60. Officer Roby intentionally and unlawfully arrested and confined Mr. Okosi without probable cause, and without a warrant or any other legal process.

61. As a direct result, Mr. Okosi was deprived of his liberty and suffered harm, including physical and emotional harm.

## COUNT V
### Malicious Prosecution (Common Law)

62. Mr. Okosi restates and realleges the foregoing paragraphs.

63. Officer Roby intentionally, maliciously and without probable cause caused a criminal case to be initiated against Mr. Okosi. Officer Roby made false allegations that Mr. Okosi assaulted him to justify the charges against Mr. Okosi.

64. Mr. Okosi's criminal case was finally and favorably terminated when the Commonwealth voluntarily dismissed the charges against him based on its determination that he was innocent or, at a minimum, that it lacked reasonable grounds to prosecute the case.

65. Officer Roby's actions in maliciously prosecuting the baseless criminal case against Mr. Okosi have caused him harm.

## COUNT VI
### Abuse of Process (Common Law)

66. Mr. Okosi restates and realleges the foregoing paragraphs.

67. Officer Roby intentionally and unlawfully used process against Mr. Okosi for an ulterior or illegitimate purpose, resulting in harm to Mr. Okosi.

## COUNT VII
### False Imprisonment (Common Law)

68. Mr. Okosi restates and realleges the foregoing paragraphs.

69. Officer Roby, acting under color of law, intentionally and unlawfully arrested Mr. Okosi without probable cause, and without a warrant or any other legal process, and thereby directly confined Mr. Okosi against his will.

70. Mr. Okosi was conscious of this unconsented-to confinement, deprived of his liberty, and suffered harm as a result.

WHEREFORE, Mr. Okosi respectfully requests that the Court grant the following relief:

A. Enter judgment in favor of Mr. Okosi and against Officer Roby on all counts of the Complaint;

B. Award compensatory damages and punitive damages in an amount to be determined by the jury;

C. Award Mr. Okosi his attorneys' fees, costs, and interest as permitted by law; and

D. Grant such further and other relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

MICHAEL OKOSI,

By his attorneys,

/s/Alycia M. Kennedy
Alycia M. Kennedy (BBO# 688801)
Max D. Stern (BBO# 479560)
TODD & WELD LLP
1 Federal Street, 27th Floor
Boston, MA 02110
(617) 724-2626
mdstern@toddweld.com
akennedy@toddweld.com

Matthew R. Segal (BBO# 654489)
Jessie J. Rossman (BBO# 670685)
Daniel L. McFadden (BBO# 676612)
Areeba Jibril (*Pro Hac Vice* motion forthcoming)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
211 Congress Street
Boston, MA 02110
Tel.: (617) 482-3170
msegal@aclum.org
jrossman@aclum.org
dmcfadden@aclum.org
ajibril@aclum.org