UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Michael Okosi, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 1:21-cv-11884-IT |
| | * |
| Scott Roby, | * |
| | * |
| Defendant. | * |

MEMORANDUM & ORDER

April 28, 2023

TALWANI, D.J.

On February 17, 2023, a jury found Defendant Officer Scott Roby liable to Plaintiff Michael Okosi for unlawful seizure under 42 U.S.C. § 1983 (Count One), and for false arrest (Count Four), malicious prosecution (Count Five), and false imprisonment (Count Seven) under state common law, and awarded Okosi $17,500 in compensatory damages and $75,000 in punitive damages. Verdict Form [Doc. No. 102].[1] Pending before the court are Officer Roby's Motion for Judgment as a Matter of Law ("Motion") [Doc. No. 97] and Renewed Motion for Judgment as a Matter of Law ("Renewed Motion") [Doc. No. 98] on the grounds of qualified immunity and insufficient evidence. For the reasons that follow, Officer Roby's Motions [Doc. Nos. 97, 98] are DENIED.

### I. Evidence Presented at Trial Relevant to the Pending Motions

On November 23, 2018, a woman called the Boston Police Department ("BPD") to Okosi's residence because of a disagreement between her and another woman. Trial Exs. 1.1,

---

[1] The jury did not find for Okosi on his claims of excessive force (Count II), battery (Count III), or abuse of process (Count VI) under state common law. Verdict Form [Doc. No. 102].

1.2. Officer Ashley Sena, Officer Stephan Lockwood, and other officers responded to the call. Day 3 Trial Tr. 46:19–21; Day 2 Trial Tr. 145:03–05. Officer Sena spoke with the caller in the first floor living room. Day 3 Trial Tr. 47:06–11. A few moments later, Okosi came down to the first floor and encountered Officer Sena and other officers in his home. Id. at 47:12–17; Day 2 Trial Tr. 48:07–19; Trial Ex. 6. Officer Roby was not present at this time. See Day 3 Trial Tr. 49:04–23.

When Okosi was already downstairs, Officer Roby entered through the front door of the house and observed three or four officers inside the first floor living area to the right. Day 3 Trial Tr. 81:03–81:08; Trial Ex. 5. Officer Roby observed Okosi in the first floor living area yelling at Officer Sena and Officer Lockwood to "get the fuck out" of his house. Day 3 Trial Tr. 82:02–07. After Okosi calmed down and stopped yelling, Day 2 Trial Tr. 51:04–07, he asked Officer Roby "Can you close my front door, bro? I pay for heat, can you close my front door, please?" Trial Ex. 2, 0:15–0:21. At this point, Officer Roby was standing in the doorway between the foyer and the first floor living area and Officer Michael Mastronardi was standing in the main hallway to Officer Roby's side. Id.; Day 3 Jury Trial 83:25–84:02. Officer Roby gestured at Officer Mastronardi to close the front door and told Okosi to "Calm down." Trial Ex. 2, 0:19–23. Okosi said, "I'll close [the door] myself," and Officer Roby replied, "[The door] is already closing." Id. at 0:23–25. In that moment, Okosi reached past Officer Roby with his right arm and tapped the door shut as it was closing. Id.

Okosi testified that he did not make any physical contact with Officer Roby when he reached past Officer Roby to close the front door. Day 2 Trial Tr. 139:18–21. Officer Roby testified that when reaching past Officer Roby with his right hand, Okosi struck Officer Roby in his chest with a left fist and Okosi's left arm slid down Officer Roby's front towards his belt

2

buckle. Day 3 Trial Tr. 147:04–12, 151:12–17. The other three officers who testified at trial—Officers Sena, Lockwood, and Mastronardi—testified that they did not see the contact by Okosi that Officer Roby alleged. Day 2 Trial Tr. 150:08–09, 152:23–24; Day 3 Trial Tr. 70:17–23; Day 4 Trial Tr. 42:17–19.

After Okosi reached past Officer Roby with his right hand, Officer Roby grabbed Okosi's left wrist and pinned him against the front door. Day 3 Trial Tr. 86:05–23. Okosi several times said, "I didn't do shit to you," and "What did I do?" Trial Ex. 2, 0:27–40; Day 2 Trial Tr. 55:21–23, as Officer Roby and other officers handcuffed him, Trial Ex. 2, 0:27–40; Day 3 Trial Tr. 86:24–87:01. Okosi stated, "Yo, I got a camera right there that has everything. I didn't do shit to you," Trial Ex. 2, 0:51–54, as Officer Roby and the other officers took Okosi out the front door and to the police cruiser at the front of the house. Day 3 Trial Tr. 89:17–21.

That same day, Officer Lockwood wrote the police report of the incident in the writing report room at the BPD station. Day 2 Trial Tr. 145:09–146:05. Officer Lockwood testified that at one point while he was writing the police report, Officer Roby was in the room with him. Id. at 149:13–18. Officer Lockwood further testified that Officer Roby relayed that he "was assaulted on scene," id. at 150:04, and "the specifics of the assault," id. at 150:06-07, including that Officer Roby was "assaulted in the midst of []Okosi closing the door," id. at 150:19–21. Officer Lockwood testified that he wrote down in the police report what Officer Roby told him. Id. at 150:10–12.

Officer Roby testified that Officer Lockwood "may have been present when [Officer Roby] was talking to the booking officer" about the assault but that Officer Roby never "sat down" with Officer Lockwood to tell him "what happened." Day 3 Trial Tr. 123:22–124:06.

The police report of the November 23, 2018 incident in relevant part stated:

3

> The suspect demanded Officers to shut his door before deciding to try and shut the door himself. The Suspect then clenched his fists and attempted to push Officer Roby to the side with his right hand and then hit Officer Roby in the chest with a closed fist. Officer Roby and Mastronardi, along with Officer Lockwood, then restrained the Suspect's hands and arms and placed him under arrest. During the altercation, a neighbor who lives next door . . . came inside of the apartment in an attempt to calm the Suspect down. The neighbor (Unknown) [] inside of the apartment, however, was unsuccessful in calming the Suspect down.
>
> It should be noted that Officers noticed a video camera in the front hallway on the first floor. The camera was facing the front door.

Trial Ex. 8, Redacted Incident Report. Officer Roby decided which charges to bring against Okosi, Day 2 Trial Tr. 151:23–25; Day 3 Trial Tr. 122:08–10, and the police report listed the charges as Assault and Battery of a Police Officer under M.G.L. c. 265, § 13D and disorderly conduct under M.G.L. c. 272, § 53, Trial Ex. 8, Redacted Incident Report. Officer Roby testified that he understood that when an individual is charged with a crime a criminal complaint is likely to issue. Day 3 Trial Tr. 133:14–17.

Okosi spent the night of November 23, 2018, in a cell at the police station and his bail was posted the next morning. Day 2 Trial Tr. 59:03–05, 60:14–16. Upon returning home, Okosi confirmed that his security camera captured the prior day's events. Id. at 60:17–21.

At his arraignment on November 26, 2018, Okosi pled not guilty to the charges of Assault and Battery on a Police Officer and disorderly conduct provided in the police report. Id. at 77:20–21; Trial Ex. 3 ¶ 5. The day after his arraignment, Okosi provided BPD the security camera footage. Day 2 Trial Tr. 71:03–18, 71:25–72:05.

While the criminal charges were pending against Okosi, Officer Roby reviewed the police report. Day 3 Trial Tr. 126:17–127:15. Officer Roby testified that portions of the police report related to Okosi's alleged assault of him were "not completely accurate," id. at 146:07–09, but that Officer Roby did not take any steps to make corrections to the report, id. at 144:17–24.

On March 7, 2019, the charges against Okosi were dismissed on a motion by the district attorney's office for reasons consistent with Okosi's innocence. Trial Ex. 3 ¶¶ 7–8.

## II.     Standard of Review

The standard for granting a judgment as a matter of law is "stringent[,]" Malone v. Lockheed Martin Corp., 610 F.3d 16, 20 (1st Cir. 2010), and is only appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find" for the nonmoving party, Fed. R. Civ. P. 50(a)(1). The court's review should be limited and "is weighted toward preservation of the jury verdict, which stands unless the evidence was so strongly and overwhelmingly inconsistent with the verdict that no reasonable jury could have returned it." Rinsky v. Cushman & Wakefield, Inc., 918 F.3d 8, 26 (1st Cir. 2019) (quoting Crowe v. Bolduc, 334 F.3d 124, 134 (1st Cir. 2003)). All reasonable inferences must be drawn in favor of Okosi, the non-moving party. Espada v. Lugo, 312 F.3d 1, 2 (1st Cir. 2002).

## III.    Discussion

### A.    Unlawful Seizure Under 42 U.S.C. § 1983

Officer Roby contends that he is entitled to judgment as a matter of law on Count One where Okosi failed to present sufficient evidence to defeat Officer Roby's qualified immunity defense. Def.'s Renewed Mot. 2 [Doc. No. 98].

"[Q]ualified immunity shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017) (quoting Matalon v. Hynnes, 806 F.3d 627, 632–33 (1st Cir. 2015)). "To avoid a qualified-immunity defense, [the plaintiff] must show (1) that [the officer] infracted his federal rights and (2) that these rights were so clearly established that a reasonable officer should have known how

5

they applied to the situation at hand." Belsito Commc'ns Inc. v. Decker, 845 F.3d 13, 23 (1st Cir. 2016).

"'[T]he general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause' to believe that the individual has committed a crime." Bailey v. United States, 568 U.S. 186, 192 (2013) (quoting Dunaway v. New York, 442 U.S. 200, 213 (1979)). "The probable cause analysis entails 'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not of the officer's actual state of mind at the time the challenged action was taken." Nuon v. City of Lowell, 768 F.Supp.2d 323, 330 (D. Mass. 2011) (quoting Maryland v. Macon, 472 U.S. 463, 470–471 (1985) (further internal quotations omitted)). "Where 'there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them,' the existence of probable cause for an arrest is an issue for the jury; on the other hand, where the historical facts are established or undisputed, the issue becomes a mixed question of law and fact suitable for determination by the court." Id. (quoting Maxwell v. City of Indianapolis, 998 F.2d 431, 434 (7th Cir.1993)).

Officer Roby contends that Okosi presented insufficient evidence to show that Officer Roby did not reasonably believe probable cause existed to arrest Okosi. Def.'s Renewed Mot. 2 [Doc. No. 98]. The issue, however, is not Officer Roby's state of mind, but an objective assessment of the facts and circumstances confronting him at the time. And as to those facts and circumstances, such an argument gives undue weight to Officer Roby's disputed testimony of the November 23, 2018 incident and ignores Okosi's testimony that the jury was entitled to credit.

According to Officer Roby's trial testimony, Okosi struck Officer Roby with his left fist and slid his arm down Officer Roby's front to his belt buckle when Okosi reached past him to close the front door of his house. Okosi rebutted Officer Roby's testimony by testifying that that

he did not make any physical contact with Officer Roby prior to the moment Officer Roby arrested him. Three of the officers at the scene that day testified that they did not see the contact by Okosi that Officer Roby alleged. The video footage from Okosi's security camera presented to the jury also did not show any contact by Okosi prior to the arrest and did not show Okosi having "clenched his fists and attempted to push Officer Roby to the side with his right hand and then hit Officer Roby in the chest with a closed fist" as set forth in the police report.

Accordingly, the court finds that Okosi presented sufficient evidence for the jury to have concluded that Okosi did not make contact with Officer Roby and that Officer Roby did not have probable cause to arrest Okosi for Assault and Battery on a Police Officer.

Okosi also introduced sufficient evidence for the jury to find that Officer Roby did not reasonably believe he had probable cause for a disorderly conduct arrest under M.G.L. c. 272, § 53. "In various decisions, the Supreme Judicial Court (SJC) has clarified and construed the meaning of th[e] term [disorderly] and of the statute such that now (and since at least the SJC's decision in Sholley in 2000, if not substantially earlier) '[w]hat remains of the definition of 'disorderly' conduct is subsections (a) and (c) of § 250.2 of the Model Penal Code,[2] with any application of subsection (c) restricted to cases not involving protest or other expressive activities (as required by [Commonwealth v.] Feigenbaum [404 Mass. 471, 536 N.E.2d 325

---

[2] "A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (a) engages in fighting or threatening, or in violent or tumultuous behavior; . . . or (c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor. 'Public' means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, or any neighborhood." Disorderly Conduct, Model Penal Code § 250.2.

(1989) ], decision).'" Nuon, 768 F. Supp. at 330 (quoting Commonwealth v. Sholley, 432 Mass. 721, 728, 739 N.E.2d 236 (2000)).

At trial, Officer Roby did not provide testimony as to what the disorderly conduct arrest was based upon. To the extent that Officer Roby based the arrest on Okosi's contact with Officer Roby, as discussed above, the jury had sufficient evidence to find that the contact did not occur. To the extent that Officer Roby based the arrest upon his observation of Okosi swearing and yelling at the officers inside his home, probable cause does not exist where "[u]nder Massachusetts law, speech alone does not constitute 'disorderly' conduct," Veiga v. McGee, 26 F.3d 1206, 1214 (1st Cir. 1994), and where such conduct occurred inside Okosi's home, see Com. v. Mulvey, 57 Mass. App. Ct. 579, 583, 784 N.E.2d 1138, 1142 (2003) ("[I]n order to satisfy the public element of the crime [of disorderly conduct], the Commonwealth was required to establish that the disturbance nevertheless had or was likely to have had an impact upon persons in an area accessible to the public.").

Accordingly, the court finds that the jury had sufficient evidence to conclude that Officer Roby lacked probable cause for Assault and Battery on a Police Officer and disorderly conduct arrests such that Officer Roby violated Okosi's Fourth Amendment rights to be free from unlawful seizure.[3]

Regarding the second prong of the qualified immunity doctrine—that these rights were so clearly established that a reasonable officer should have known how they applied to the situation at hand—"[t]here is little question that it is clearly established law that an individual cannot be

---

[3] Officer Roby's contention that the court should enter judgment as a matter of law on the counts of false arrest (Count IV) and false imprisonment (Count VII) based on the same probable cause arguments similarly fails.

arrested absent probable cause." Fernandez-Salicrup v. Figueroa-Sancha, 790 F.3d 312, 326 (1st Cir. 2015). "However, whether or not a reasonable officer, similarly situated, would have understood that [Officer Roby's] actions violated this right is a fact-intensive question." Id.

Although, the standard under qualified immunity "gives ample room for mistaken judgments[,]" and is "met so long as the presence of probable cause is at least arguable," Ricci v. Urso, 974 F.2d 5, 7 (1st Cir. 1992) (further quotations omitted), in finding that Officer Roby lacked probable cause to arrest Okosi the jury necessarily credited Okosi's testimony that he did not make contact with Officer Roby prior to the arrest and that Officer Roby's testimony about the assault and battery was not credible. "[C]onsistent with the aforementioned discernable facts found by the jury, including the absence of a harmful or offensive contact," Rogers v. Cofield, 908 F. Supp. 2d 277, 283 (D. Mass. 2012), the second prong of qualified immunity is met.

Accordingly, Officer Roby is not entitled to qualified immunity on the unlawful seizure claim under § 1983.

### B. State Common Law Claims

Officer Roby also raises qualified immunity as to the state common law claims of false arrest (Count IV), malicious prosecution (Count V), and false imprisonment (Count VII), and a further argument that there is insufficient evidence that Officer Roby acted with malice to find that he is liable for malicious prosecution (Count V). Def.'s Renewed Mot. 4–6 [Doc. No. 98].

#### 1. Qualified Immunity

Officer Roby contends that he is entitled qualified immunity based on insufficient evidence that probable cause did not exist with regards to the state common law claims. Def.'s Renewed Mot. 4 [Doc. No. 98]. Okosi contends that Officer Roby's argument improperly applies federal qualified immunity to these state common law claims. Pl.'s Opp'n 13–15 [Doc. No. 104].

Officer Roby relies on Duarte v. Healy, 405 Mass. 43, 46 (1989) for the proposition that qualified immunity applies to the state common law claims. Def.'s Renewed Mot. 4 [Doc. No. 98]. However, Duarte narrowly "address[ed] the issue of qualified immunity under [the] [Massachusetts] State Civil Rights Act." 405 Mass. at 46. The SJC "conclude[d] it to be consistent with the intent of the Legislature in enacting the Civil Rights Act to adopt thereunder the standard of immunity for public officials developed under § 1983[,]" id., because the SJC "presume[d] that the Legislature was aware of this case law when it chose to pattern the Massachusetts Civil Rights Act after § 1983," id. at 47. Such reasoning does not extend to state common law tort claims and Officer Roby has not provided any further support for his position that qualified immunity is applicable to these claims.

Accordingly, the court finds that Officer Roby is not entitled to qualified immunity for the state common law claims.

### 2. Malicious Prosecution

Under Massachusetts law, for a finding of malicious prosecution there must be proof by preponderance of the evidence that "the defendant (i) instituted criminal proceedings (ii) with malice and (iii) without probable cause, and (iv) that the proceedings were terminated in the accused's favor." Limone v. United States, 579. F.3d 79, 89 (1st Cir. 2009).

Officer Roby contends that Okosi failed to prove that malice or improper motive prompted Officer Roby to initiate the criminal proceedings against Okosi. Def.'s Renewed Mot. 6 [Doc. No. 98]. Specifically, Officer Roby notes that (i) he and Okosi had never interacted before November 23, 2018, the day of the arrest; (ii) Officer Roby was "simply standing in the doorway at all times while inside [Okosi's] apartment before the incident leading to the arrest"; and (iii) Officer Roby told Okosi to "Calm Down. [The door] is already closing." Id.

However, Officer Roby ignores his own testimony that he understood that police reports are relied upon by prosecutors in the criminal process, the testimony of Officer Lockwood, who wrote the police report, that Officer Roby provided the information regarding Okosi's alleged "assault" to include in the police report, and the testimony of Okosi that those statements in the police report were "[a]bsolutely false[,]" Day 2 Trial Tr. 134:19. Courts have found that allegations of an officer knowingly making false statements in furtherance of criminal prosecution may be the basis of a finding of malice for a malicious prosecution claim. See e.g., Petriccia v. City of Gardner, 429 F.Supp.2d 216, 225 (D. Mass. 2006) (denying summary judgment on malicious prosecution claim where the officer "made knowingly false statements about [plaintiff] under oath in support of the criminal complaint"). Moreover, Officer Roby testified that he reviewed the police report while criminal charges against Okosi were pending and that portions of the police report related to Okosi's alleged assault of him were "not completely accurate," but that Officer Roby did not take any steps to make corrections to the police report. A failure to correct discrepancies in the police report "may be relevant to the [officer's] motives in pursuing charges against the plaintiff[][.]" Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 407, 772 N.E.2d 552, 563 (2002).

Accordingly, the court finds that there was sufficient evidence for the jury to find that Officer Roby acted with malice such that he is liable for malicious prosecution.[4]

---

[4] To the extent that Officer Roby contends that he is entitled to common law immunity on the state law tort claims, such argument fails. "[A]ccording to Massachusetts common law, 'a public official, exercising judgment and discretion, is not liable for negligence or other error in the making of an official decision if the official acted in good faith, without malice, and without corruption.'" Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 146 (1st Cir. 2016) (quoting Nelson v. Salem State Coll., 446 Mass. 525, 845 N.E.2d 338, 348 (2006)). However, common law immunity is not applicable here where the jury found that Officer Roby acted with malice.

## IV. Conclusion

For the foregoing reasons, Officer Roby's Motion for Judgment as a Matter of Law [Doc. No. 97] and Renewed Motion for Judgment as a Matter of Law [Doc. No. 98] are DENIED.

IT IS SO ORDERED.

April 28, 2023                                    /s/ Indira Talwani
                                                  United States District Judge