**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 21-cv-11884-IT**

MICHAEL OKOSI,

      **Plaintiff,**

v.

SCOTT ROBY

      **Defendant.**

<u>**SCOTT ROBY'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR REMITTITUR**</u>

**I.      <u>INTRODUCTION</u>**

Pursuant to Fed. R. Civ. P. 59(e), the Defendant, Scott Roby, moves this Court to vacate or reduce the punitive damages award of $75,000.00 for Count I: Unlawful Seizure, 42 U.S.C. §1983, because it is grossly excessive and runs afoul of the Due Process clause.  <u>See</u> Jury Verdict, Docket Entry No. 102.

**II.      <u>EVIDENCE AT TRIAL</u>**

On November 23, 2018, Plaintiff's fiancé, Princess, called 911 and reported that there was a woman in her home threatening her with a knife. Day 2 Trial Tr. 43:16; Ex. 1.1. Princess had found Plaintiff in a bedroom with another woman. Day 2 Trial Tr. 47:2-48:5.  Princess called the police and alleged that she did not know who this woman was or how she got into the home, and that this woman was threatening her with a knife. Ex. 1.1.  Multiple police officers responded,

including Officer Ashley Sena, Officer Stephen Lockwood, Officer Michael Mastronardi, and Officer Scott Roby. Day 2 Trial Tr. 145:1-145:5. While Officer Sena was speaking with Princess in the first-floor apartment, Plaintiff came down the common stairway toward them screaming "Get the fuck out of my house." Day 3 Trial Tr. 45:9-45:17; 82:6. Hearing commotion, Officers Mastronardi and Roby – who were outside at the time – entered the home as backup. Day 3 Trial Tr. 81:24-81:8; Day 4 Trial Tr. 28:12-29:7.  Roby had worked thirty-five hours of overtime the week of this incident with the Plaintiff. Day 4 Trial Tr. 77:1-14.

Officer Roby stood in the entryway to the first-floor unit and observed Plaintiff appeared wet as he screamed at Officer Sena repeatedly and tensed his body. Day 3 Trial Tr. 82:2-82:21. Plaintiff then turned to Officer Roby and asked him to close the front door to the house. Day 3 Trial Tr. 82:12-83:13. Officer Roby responded by asking Officer Mastronardi to close the door. Day 3 Trial Tr. 83:20-83:21. As the door was closing, Plaintiff walked toward Officer Roby and said "I'll close it myself." Officer Roby responded, "Calm down, it's already closing." Day 3 Trial Tr. 84:5-84:7.

In that moment, Plaintiff reached past Officer Roby with his right arm to shut the door. Day 3 Trial Tr. 84:12-84:16. Officer Roby testified that as Plaintiff did this, Plaintiff pressed his left fist against Officer Roby's midsection and slid it down toward his groin area. Day 3 Trial Tr. 84:21-84:22. Plaintiff testified that his left arm remained at his side. Day 2 Trial Tr. 53:18-53:19.

Officer Roby then grabbed Plaintiff's wrist as it slid down his torso and, with the assistance of other officers, placed Plaintiff in handcuffs. Day 3 Trial Tr. 86:21-87:24.  Officer Roby and Officer Mastronardi walked Plaintiff down the front stairs and to the police vehicle as Plaintiff repeatedly stated "I didn't do shit to you." Ex. 2. A neighbor came outside, approached Plaintiff, and tried to get Plaintiff to calm down. Day 3 Trial Tr. 92:7-92:14.

Plaintiff was transported to the precinct where Officer Roby informed the officer at the booking desk that Plaintiff was under arrest for assault and battery on a police officer and disorderly conduct. Day 3 Trial Tr. 96:15-96:19; 97:16-97:19. Officer Lockwood wrote the police report. Day 2 Trial Tr. 145:9-145:10. These charges were ultimately dismissed on March 7, 2019 upon motion by the District Attorney's Office. Day 2 Trial Tr. 142:23-143:1.

Plaintiff testified about the emotional distress he experienced as a result of the arrest.  See e.g. Day 2 Trial Tr. 58:20-58:21.  Plaintiff was arrested and taken to the police station where he was held until his fiancé bailed him out.  Day 2 Trial Tr.60:15-60:16. He was given medical attention at the police station and clothes.  Day 2 Trial Tr. 116:16-118:2; 127:15-128:14. He attended two court appearances, did not incur any legal fees, and his bail money was returned to him. Day 2 Trial Tr. 126:1-126:7. Plaintiff testified that he was "very traumatized" by the experience. Day 2 Trial Tr. 55:10. Plaintiff did not provided evidence of any psychological or medical evaluation after the incident or evidence of how this affected him going forward.

On February 17, 2023, the jury returned a verdict for the Plaintiff on Count I: Unlawful Seizure under 42 U.S.C. §1983, Count IV: False Arrest, Count V: Malicious Prosecution, and Count VII: False Imprisonment, on these claims the Plaintiff was awarded $17,500.00 in compensatory damages and the jury $75,000.00 in punitive damages for Count I: Unlawful Seizure under 42 U.S.C. §1983.  See Jury Verdict, Docket Entry No. 102.  On April 27, 2023, this Court entered judgment.

III.    **ARGUMENT**

The Due Process Clause of the Fourteenth Amendment limits an award of punitive damages, and precludes awards that are "grossly excessive." Mendez-Matos v. Guaynabo, 557 F.3d 36, 52 (1st Cir. 2009) quoting State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408,

419 (2003). Like every defendant before the court, the Defendant Roby is entitled to fair notice of the penalty that he could face for his quick decision to arrest the Plaintiff. <u>Mendez-Matos v. Guaynabo</u>, 557 F.3d 36, 52 (1st Cir. 2009) citing <u>BMW North America, Inc. v. Gore</u>, 517 U.S. 559 (1996).

The Supreme Court set forth three (3) factors to determine whether an award of punitive damages is "grossly excessive." <u>Mendez-Matos v. Guaynabo</u>, 557 F.3d 36, 52 (1st Cir. 2009) citing <u>BMW</u>, 517 U.S. 574. The factors are 1) "the degree of reprehensibility of the defendant's conduct; 2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and 3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." <u>Id.</u> citing <u>BMW</u> at 575.

The degree of reprehensibility of the defendant's conduct is the most critical of the factors. <u>Id.</u> citing <u>State Farm Mut. Auto Ins. Co. v. Campbell</u>, 538 U.S. 408, 419 (2003). In determining the degree, the Supreme Court directed that consideration should be given to whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident" <u>Id.</u> citing <u>State Farm</u>, 538 U.S. at 419. Harm that is the result of "violence or the threat of violence" is more reprehensible. <u>Mendez-Matos,</u> 557 F.3d at 53 (quoting <u>BMW</u>, 517 U.S. 575-576). But, there does not have to be a physical injury for the conduct to reprehensible. <u>Id.</u>

The Defendant's conduct did not reach a high degree of reprehensibility. <u>Cf.</u> <u>Davis v. Rennie</u>, 264 F.3d 86 (1st Cir. 2001) (involuntarily committed mental patient punched multiple times while being held down by several mental health workers). The Defendant was not violent.

The Plaintiff was not physically harmed by the arrest.  The jury had the opportunity to consider whether the Defendant used excessive force and they found that he did not. [1]  The jury did not credit Plaintiff's claim that he suffered injuries to his feet or wrists from the arrest.  The compensatory damages were awarded for the Plaintiff's claimed mental suffering and his time in custody and attending court.  The Defendant was not indifferent to the Plaintiff's rights or his health and safety.  There was no evidence about the Plaintiff's financial state or vulnerability.  Defendant did not know the Plaintiff and interreacted with him only during this single isolated occasion. Based on the evidence presented at trial and the jury's rejection of claims relating to excessive force, the Defendant's conduct clearly did not reach a high degree of reprehensibility.

The second BMW factor is whether there is a reasonable relationship between the harm suffered and the punitive damages award.  BMW, 517 U.S. at 581.  While there is no definitive "bright line ratio" that punitive damages cannot exceed, "the focus is whether the measure of punishment is both reasonable and proportionate to the harm suffered by the plaintiff and to the general damages recovered."  Mendez-Matos, 557 F.3d at 54 (quoting State Farm, 538 U.S. 424, 426). "Where the compensatory award is substantial, a ratio of punitive-to-compensatory damages larger than one-to-one may be unreasonable."  Id. at 55 citing State Farm, 538 U.S. 425.

Here, Plaintiff was awarded $17,500.00 in compensatory damages for success on four claims – one of which is a § 1983 claim on which he may recover punitive damages.  Split among the four counts, the Plaintiff was awarded approximately $4375.00 for each count.  The amount of compensatory damages was significant for the harm suffered by the Plaintiff.  The

---

[1] The jury found that Roby was not liable for Count II: Excessive Force, 42 U.S.C. § 1983, Count III: Common Law Battery, or Count VI: Common Law Abuse of Process.  See Jury Verdict, Docket Entry No. 102.

Plaintiff was arrested and taken to the police station and held until the morning when his fiancé bailed him out.  Plaintiff claimed emotional distress from the arrest and the criminal process and was unsupported by his testimony beyond bald claims of "trauma" and "pain."  Examining the award of compensatory damages awarded for the § 1983 claim of Unlawful Seizure in relation to the punitive damages reveals that the punitive damages were approximately 17 times the compensatory damages awarded for Civil rights violation. An appropriate 1:1 ratio would have punitive damages match the compensatory award on the § 1983 claim of $4,375.00. Even if the jury awarded all compensatory damages on the § 1983 claim and none on the state law claims – though there is no indication that this occurred – punitive damages should be adjusted at most to an award of $17,500.00 to match the substantial award of compensatory damages.

The third BMW factor directs that the punitive damages awarded be considered alongside awards in comparable cases.  In a comparable case of false arrest, the trial court reduced the award of punitive damages from $350,000.00 to $35,000.00, and this was affirmed.  Mendez-Matos v. Guaynabo, 557 F.3d 36, 52 (1st Cir. 2009).  In this case, the Mayor arrested construction workers for being on a job site and refusing to leave. The Mayor arrived with about ten to fourteen police officers, some of whom were armed and surrounded the Plaintiffs.  No one was injured by the Mayor's action, but the Plaintiffs suffered great distress. The jury had awarded $35,000.00 in compensatory damages. See also Milfort v. Prevete, 3 F. Supp.3d 14 (E. D. N.Y. 2014) (punitive damages award reduced from $40,000.00 to $5,000 where no probable cause for arrest for disorderly conduct and Plaintiff was injured and officer falsified documents). Cf. Davis v. Rennie, 264 F.3d 86 (1st Cir. 2001) (court reduced punitive damages involuntarily committed mental patient punched multiple times while being held down by several mental health workers punitive damages awards reduced to have reasonable relationship to the

compensatory damages). Based upon these comparable cases and the facts presented at trial, punitive damages here should be reduced to, at most, $17,500.00.

**IV.**     <u>**CONCLUSION**</u>

For the above reasons, the Defendant moves this Court to vacate or reduce the award of punitive damages against him.

Respectfully submitted:
DEFENDANT

SCOTT ROBY

By his attorneys:

<u>*/s/ Sarah J. McAteer*</u>
Sarah J. McAteer (BBO#706403)
Assistant Corporation Counsel
Elizabeth L. Bostwick (BBO#644498)
Senior Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4048 (McAteer)
(617) 635-4031 (Bostwick)
Sarah.McAteer@boston.gov
Elizabeth.Bostwick@boston.gov

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I have complied with Local Rule 7.1 and conferred with Plaintiff regarding the relief requested herein.

_____ */s/ EL Bostwick*_____
Elizabeth L. Bostwick


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 24, 2023.


*/s/ EL Bostwick*

_____
Elizabeth L. Bostwick