UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-cv-11884-IT

MICHAEL OKOSI,
**Plaintiff,**

v.

SCOTT ROBY
**Defendant.**

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR NEW TRIAL

### I.     INTRODUCTION

Pursuant to Fed. R. Civ. P. 59, Defendant Scott Roby ("Officer Roby") moves this Honorable Court, to grant him a new trial because A) the trial court erred by precluding the Defendant from presenting evidence of the ▮▮▮▮▮▮▮▮; B) the trial court erred by precluding witnesses from testifying that they believed Plaintiff to be intoxicated at the time of the allegations; and C) the trial court erred by instructing the jury on punitive damages.

### II.    EVIDENCE PRESENTED AT TRIAL RELEVANT TO MOTION FOR NEW TRIAL

On November 23, 2018, Plaintiff's fiancé, Princess, called 911 and reported that there was a woman in her home threatening her with a knife. Day 2 Trial Tr. 43:16; Ex. 1.1. Princess had found Plaintiff in a bedroom with another woman. Day 2 Trial Tr. 47:2-48:5. Princess called the police and alleged that she did not know who this woman was or how she got into the home, and that this woman was threatening her with a knife. Ex. 1.1. Multiple police officers responded, including Officer Ashley Sena, Officer Stephen Lockwood, Officer Michael Mastronardi, and Officer Scott Roby. Day 2 Trial Tr. 145:1-145:5. While Officer Sena was speaking with Princess

in the first-floor apartment, Plaintiff came down the common stairway toward them screaming "Get the fuck out of my house." Day 3 Trial Tr. 45:9-45:17; 82:6. Hearing commotion, Officers Mastronardi and Roby – who were outside at the time – entered the home as backup. Day 3 Trial Tr. 81:24-81:8; Day 4 Trial Tr. 28:12-29:7.

Officer Roby stood in the entryway to the first-floor unit and observed Plaintiff appeared wet as he screamed at Officer Sena repeatedly and tensed his body. Day 3 Trial Tr. 82:2-82:21. Plaintiff then turned to Officer Roby and asked him to close the front door to the house. Day 3 Trial Tr. 82:12-83:13. Officer Roby responded by asking Officer Mastronardi to close the door. Day 3 Trial Tr. 83:20-83:21. As the door was closing, Plaintiff walked toward Officer Roby and said "I'll close it myself." Officer Roby responded, "Calm down, it's already closing." Day 3 Trial Tr. 84:5-84:7.

In that moment, Plaintiff reached past Officer Roby with his right arm to shut the door. Day 3 Trial Tr. 84:12-84:16. Officer Roby testified that as Plaintiff did this, Plaintiff pressed his left fist against Officer Roby's midsection and slid it down toward his groin area. Day 3 Trial Tr. 84:21-84:22. Plaintiff testified that his left arm remained at his side. Day 2 Trial Tr. 53:18-53:19. Officer Roby then grabbed Plaintiff's wrist as it slid down his torso and, with the assistance of other officers, placed Plaintiff in handcuffs. Day 3 Trial Tr. 86:21-87:24.

Officer Roby and Officer Mastronardi walked Plaintiff down the front stairs and to the police vehicle as Plaintiff repeatedly stated "I didn't do shit to you." Ex. 2. A neighbor came outside, approached Plaintiff, and tried to get Plaintiff to calm down. Day 3 Trial Tr. 92:7-92:14.

Plaintiff was transported to the precinct where Officer Roby informed the officer at the booking desk that Plaintiff was under arrest for assault and battery on a police officer and disorderly conduct. Day 3 Trial Tr. 96:15-96:19; 97:16-97:19. Officer Lockwood wrote the

police report. Day 2 Trial Tr. 145:9-145:10. These charges were ultimately dismissed on March 7, 2019 upon motion by the District Attorney's Office. Day 2 Trial Tr. 142:23-143:1.

### III.  STANDARD OF REVIEW

A "court may, on motion, grant a new trial on all or some of the issues—and to any party — after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  "Under Federal Rule of Civil Procedure 59, the court may override a jury verdict and order a new trial 'if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice.'"  Sebastino v. Springfield Terminal Ry. Co., 530 F. Supp. 3d 81, 85 (D. Mass. 2021) (quoting Teixeira v. Town of Coventry ex rel. Przybyla, 882 F.3d 13, 16 (1st Cir. 2018)); see Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009)  ("A trial court may grant a new trial on the basis that the verdict is against the weight of the evidence.").  "A district court's power to grant a motion for a new trial is much broader than its power to grant a JMOL" under Federal Rule of Civil Procedure 50. Jennings v. Jones, 587 F.3d at 436 (1st Cir. 2009).  "When deciding whether to grant a new trial, a district court is free to independently weigh the evidence." Id.  "Further, 'the district court has the power and duty to order a new trial whenever, in its judgment, the action is required in order to prevent injustice.'" Id. (quoting Kearns v. Keystone Shipping Co., 863 F.2d 177, 181 (1st Cir.1988).

"The trial judge, upon considering a motion for new trial, may consider the credibility of the witnesses who had testified and, of course, will consider the weight of the evidence." MacQuarrie v. Howard Johnson Co., 877 F.2d 126, 132 (1st Cir. 1989).  In addition, a court may grant a new trial where a jury instruction "is 1) 'misleading, unduly complicating, or incorrect as a matter of law' and 2) is not harmless." Provanzano v. MTD Products Co., 270 F.Supp.3d 419, 422 (D. Mass. 2017) (quoting Davignon v. Clemmey, 322 F.3d 1, 9 (1st Cir. 2003).

III.   **ARGUMENT**

A. **Precluding the Defendant from Presenting Evidence of ▮▮▮▮▮▮▮ Was an Error.**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



**B. The Court Erred by Precluding Witnesses from Testifying About Plaintiff's Intoxication**

The trial court erred when it precluded witnesses from testifying to their lay opinion that Plaintiff was intoxicated at the time of the incident underlying Plaintiff's allegations. See Court Order, D.E. 79, Plaintiff's Motion in Limine, D.E. 61, Defendant's Opposition, D.E. 66. Police officers, and lay witnesses generally, are competent to testify about their opinion that an individual appeared intoxicated based upon their personal observations. "A person who has

actual knowledge from observation, is competent to testify as to whether an individual is intoxicated. It is not a matter of opinion any more than are questions of distance, size, color, weight, identity, age and similar matters." Gaynor v. Atlantic Greyhound Corp., C.A.3 (Pa.) 1950, 183 F.2d 482; see also Edwards v. City of Worcester, 172 Mass. 104, 105, 51 N.E. 447, 448 (1898) (finding that "witnesses were rightly allowed to testify whether the plaintiff was intoxicated" and that "[i]t was not a matter of opinion," but a matter of fact). In this case, Officer Roby and Officer Sena would have – if not precluded by the Court – testified that they believed that Plaintiff was intoxicated at the time of the events underlying the Complaint. However, due to the Court's Order, the witnesses were precluded from doing so. The most critical issue during this trial was whether Plaintiff made contact with Officer Roby's chest. Jurors should have been permitted to consider how, if at all, Plaintiff's intoxication affected not only his behavior on November 23, 2018, but also his recollection of the events he described in his testimony from that date.  Precluding such testimony that is plainly admissible was an error that harmed the Defendant.

    C. **The Court Erred in Instructing the Jury on Punitive Damages.**

The record evidence did not support an instruction on punitive damages for Scott Roby's decision to arrest the Plaintiff for physical contact.  Over Defendant's objection, the Court instructed the jury that it could award punitive damages if they found a violation of Plaintiff's Constitutional rights. See Jury Trial, Day 4, February 16, 2023, pages 77-78.  Punitive damages are not favored in law and are only permitted with "caution" and "within normal limits." Powell v. Alexander, 391 F.3d 1, 15 (1st Cir. 2004) (quoting McKinnon v. Khang Wah Rest., 83 F.3d 498, 508 (1st Cir. 1996)).  Such damages may be awarded only when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous

indifference to the federal protected rights of others." Powell v. Alexander, 391 F.3d 1, 15 quoting Smith v. Wade, 461 U.S. 30, 56 (1983).  There must be a minimum showing that the defendant had a reckless intent, and the "focus should be on the acting party's state of mind." Powell v. Alexander, 391 F.3d 1, 15.   Absent this threshold showing, an instruction of punitive damages is not proper.  Iacobucci v. Boulter, 193 F.3d 26,  (1st Cir. 1999).  There must be evidence that the actor has "knowledge that he is acting in violation of federal law." Iacobucci v. Boulter, 193 F.3d 14, 26 (1st Cir. 1999).   Thus, there must be proof that the actor acted "in the face of a perceived risk that his actions would violate federal law."  Iacobucci at 26, quoting Kolstad v. American Dental Assoc., 527 U.S. 526 (1999).

In a false arrest case, the Plaintiff must "adduce evidence sufficient to show that [the defendant officer] determined to effectuate the arrest knowing that he lacked probable cause to do so, or, at least, with conscious indifference to the possibility that he lacked probable cause." Iacobucci at 26.  The test for punitive damages is subjective based on the actor's state of mind. Id. at fn.8.

Here, the Plaintiff did not present such evidence.  Rather the evidence only showed the Defendant's "split-second decision to arrest the Plaintiff which does not "lend itself to the inference that [the officer] acted with an evil motive or a conscious awareness that the arrest might violate [the plaintiff's] civil rights."  Iacobucci at 26.  Punitive damages are not proper where "an exasperated police officer, acting in the heat of the moment, [] made an objectively unreasonable mistake." Id. at 26-27.  The trial court should not have given the jury an instruction on punitive damages. [1]

---

[1] The Defendant also files a Motion for Remittitur on the amount of the awarded punitive damages.

IV. **CONCLUSION**

**WHEREFORE**, Defendant Scott Roby respectfully requests that this Honorable Court grant his motion for a new trial and grant such other and further relief as it deems just and proper.

Dated: May 24, 2023

    Respectfully submitted:
    DEFENDANT

    SCOTT ROBY

    By his attorneys:

    */s/ Sarah J. McAteer*
    Sarah J. McAteer (BBO#706403)
    Assistant Corporation Counsel
    Elizabeth L. Bostwick (BBO#644498)
    Senior Assistant Corporation Counsel
    City of Boston Law Department
    City Hall, Room 615
    Boston, MA 02201
    (617) 635-4048 (McAteer)
    (617)635-4031 (Bostwick)
    Sarah.McAteer@boston.gov
    Elizabeth.Bostwick@boston.gov

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

I have complied with Local Rule 7.1 and conferred with Plaintiff regarding the relief requested herein.

*/s/ Sarah J. McAteer*
Sarah J. McAteer

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 24, 2023.

*/s/ Sarah J. McAteer*
Sarah J. McAteer